KING, HOLMES, PATERNO & SORIANO, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
HKING@KHPSLAW.COM
SETH MILLER, ESQ., STATE BAR NO. 175130
SMILLER@KHPSLAW.COM
1900 AVENUE OF THE STARS, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE: (310) 282-8903

Attorneys for Plaintiff VERY GOOD TOURING, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERY GOOD TOURING, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CATHEDRAL SYNDICATE: 2010, a.k.a. CATHEDRAL SYNDICATE MMX, AT LLOYD'S OF LONDON, a foreign company; LIBERTY SYNDICATE 4472 AT LLOYD'S OF LONDON, a foreign company; XL CATLIN SYNDICATE 2003 OF LLOYD'S OF LONDON, a foreign company; MARKEL SYNDICATE 3000 OF LLOYD'S OF LONDON, a foreign company; ALLIANZ SYNDICATE OF LLOYD'S OF LONDON, a foreign company, <br><br> Defendant. | CASE NO. <br><br> **COMPLAINT FOR** <br> **1. BREACH OF CONTACT; AND** <br> **2. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** <br><br> **JURY TRIAL DEMANDED** |

/ / /

/ / /

/ / /

/ / /

4642.017/1157890.6
COMPLAINT

Plaintiff Very Good Touring, Inc. ("Very Good" or "Plaintiff"), the touring company for popular and successful artist Kanye West ("Kanye"), brings this suit against numerous insurance syndicates within Lloyd's of London ("Defendants"), as follows:

## INTRODUCTION

1. Performing artists who pay handsomely to insurance companies within the Lloyd's of London marketplace to obtain show tour "non-appearance or cancellation" insurance, should take note of the lesson to be learned from this lawsuit: Lloyd's companies enjoy collecting bounteous premiums; they don't enjoy paying claims, no matter how legitimate. Their business model thrives on conducting unending "investigations," of bona fide coverage requests, stalling interminably, running up their insured's costs, and avoiding coverage decisions based on flimsy excuses. The artists think they're buying peace of mind. The insurers know they're just selling a ticket to the courthouse.

2. Very Good submitted its claim to Defendant insurers on November 23, 2016, over the cancellation of the remaining shows in Kanye's 2016 Saint Pablo Tour (the "Tour") caused by a debilitating medical condition. Nevertheless, now more than eight months later, the insurers have neither paid on the multi-million dollar claim nor denied the claim. Nor have they provided anything approaching a coherent explanation about why they have not paid, or any indication if they will *ever* pay or even make a coverage decision, implying that Kanye's use of marijuana may provide them with a basis to deny the claim and retain the hundreds of thousands of dollars in insurance premiums paid by Very Good. The stalling is emblematic of a broader *modus operandi* of the insurers of never-ending post-claim underwriting where the insurers hunt for some contrived excuse not to pay.

3. Following numerous negotiations, failed mediations and countless requests that Plaintiff forbear from filing suit, Defendants made yet another request on July 24, 2017 that Plaintiff not file, and promised a coverage decision on July 27.

That promise proved as hollow as their other utterances, and the insurers reneged on yet another commitment. Plaintiff was left with no choice but to file this action. As a parting shot, in a move intended to intimidate and dissuade Plaintiff from filing suit, Plaintiff is informed and believes, the insurers and/or their agents purposely and maliciously caused to be disseminated to news outlets, privileged, private and personal information ("Confidential Information") regarding Kanye and the dialogue between Very Good and the insurers. Plaintiff is informed and believes that the actual purpose of requesting the deferral until July 27 of Plaintiff filing suit, was to accommodate the defendant insurers' efforts to successfully "plant" the Confidential Information with news outlets who would assure they publish the "Confidential Information." Planting the Confidential Information with news outlets represents an egregious violation of written non-disclosure agreements that the Defendant insurers and their agents signed, covering such information to which they were made privy.

4. Three additional insurance companies insuring the Tour along with Defendants, are not being sued here, as they recognized the merits of Very Good's claim over the cancellation of the Tour, and have already honored their obligations to pay Very Good on the subject claim.

## THE PARTIES

5. Plaintiff Very Good is a corporation organized and existing under the laws of the State of California, with its principal place of business in the City of Los Angeles, California. At all relevant times herein, Very Good was the touring company for Kanye, and provided his services in connection with his Tour throughout the United States, in support of his seventh studio album The Life of Pablo released in 2016.

6. Defendants Cathedral Syndicate: 2010, a.k.a. Cathedral MMX Syndicate ("Cathedral"), XL Catlin Syndicate 2003 ("Catlin"), Liberty Syndicate 4472 ("Liberty"), Markel Syndicate 3000 ("Markel"), and Allianz Syndicate

("Allianz") are each foreign companies that offer property and casualty insurance products to businesses and professionals. The principal offices of each of the Defendants are in London, England. At all times relevant herein, Cathedral, Catlin, Liberty, Markel, and Allianz were transacting insurance business within, and having substantial commercial contacts and impact within the State of California, in this judicial district.

7. Each of the Defendants is, and at all material times was, a separate syndicate within the Lloyd's of London market organization, with its own respective underwriters evaluating the risk and then subscribing to the policies described herein. Defendants have refused to disclose what their underwriting files reflect regarding their evaluation of the risk before subscribing to the policies.

## JURISDICTION AND VENUE

8. This Court has diversity jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(2) because the Plaintiff is a citizen of this state, the Defendants are all citizens of a foreign state, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

9. This Court has personal jurisdiction over each of the Defendants because, among other reasons, the two "Insurance Policies" described in greater detail hereafter, were to be performed by the Defendants in whole or in part, within this judicial district in California; the Insurance Policies obtained from Defendants through a broker licensed to do business in California; the Insurance Policies insure an entity (i.e., Very Good) having its principal place of business within this judicial district in California; and the Insurance Policies provide that California law shall apply to such contracts, and that Defendants will submit to the jurisdiction of a court of competent jurisdiction within the United States.

10. Venue is proper in this judicial district pursuant to 28 U.S.C.§ 1391 (b)(1) and (c) because all of the Defendants transact business as insurance companies in this judicial district.

11. Venue is also proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to Plaintiff's insurance claim occurred in this judicial district.

## THE SAINT PABLO TOUR, RESCHEDULED SHOWS, AND THE TOUR CANCELLATION

12. Very Good planned an initial Saint Pablo Tour consisting of 38 event dates, from August 12, 2016 through November 2, 2016 (hereafter Leg 1 of the Tour). In the exercise of prudence and sound business management, Very Good sought the peace of mind of having tour non-appearance and cancellation insurance to guard against cancellation of shows due to such perils as an illness of Kanye. The purpose of such policies is to protect the substantial investment an artist such as Kanye and his touring company have to make in creating and manufacturing the production for the tour, retaining personnel, funding rehearsals, arranging transportation, venues, hotels and other tour logistics, as well as designing, manufacturing and transporting event and date-specific merchandise.

13. Through its management, Very Good reached out to the Lloyd's market for such coverage and presented to the Defendant insurers the contemplated tour schedule, obtained a premium quote, and entered into a Cancellation, Abandonment and Non Appearance Insurance policy, the first of the two Insurance Policies with Defendants for the Tour (the "Leg 1 Policy"), as more particularly described in Paragraph 28 below.

14. Of the 38 event dates on the Leg 1 schedule, 36 were performed without incident. Two of the shows in early October 2016 had to be cancelled after Kanye's wife, Kim Kardashian-West, was the victim of a brazen October 2, 2016, robbery in Paris, France where she was bound and gagged while robbers looted jewelry from her hotel room. These two cancelled shows were rescheduled for the subsequent Leg 2 of the Tour, described below.

///

15. By separate endorsement to the Leg 1 Policy, and for an additional premium paid, a November 3, 2016 show at the Forum in Los Angeles was added to the Tour.

16. The November 3, 2016 date had to be cancelled due to Kanye experiencing a throat illness. That show was rescheduled to November 20, 2016.

17. In light of the tremendous success of Leg 1 of the Tour, additional dates were arranged for a Leg 2 of the Tour, to commence November 16, 2016, and end with a show on New Year's Eve 2016, at Barclays Center in Brooklyn, New York. Again, management reached out to Defendants in the Lloyd's of London market and provided a schedule of the event dates to Defendants; Very Good was quoted a premium amount of several hundred thousand dollars that was paid; and the parties entered into the second of the two Insurance Policies (the "Leg 2 Policy").

18. On November 19, 2016, Kanye commenced the scheduled, insured show in Sacramento, California but was unable to finish the show. His behavior was strained, confused and erratic. Ticket buyers for the show were given full refunds.

19. By the following day, November 20, 2016, Kanye's medical condition showed no sign of improvement, prompting the decision by all concerned to cancel the show scheduled at the Los Angeles Forum that evening, and to cancel the entire balance of the Tour. The cancellation of the Tour was announced to the public that day and Very Good and its tour promoter issued full refunds for purchasers of tickets for all cancelled shows.

20. As the result of his serious, debilitating medical condition, Kanye was hospitalized at UCLA Neuropsychiatric Hospital Center on November 21, 2016.

21. On November 23, 2016, the loss claim under the Insurance Policies was tendered to Defendants. Cathedral, the lead underwriter for all the Defendant Lloyd's syndicates on the Insurance Policies, acknowledged receipt of the insurance

claim by Very Good under those policies on that date.

22. Kanye remained at UCLA for 8 days, and after being released from that facility on November 29, 2016, was under full time care and supervision.

23. Kanye continues to be treated by the primary physician who oversaw his care at UCLA in November 2016. That doctor confirmed to Defendants in sworn testimony that Kanye suffered a debilitating medical condition, requiring that Kanye not continue with the Tour. A purported "Independent" Medical Examination ("IME") doctor retained by Defendants to examine Kanye not long after his release from UCLA confirmed that Kanye indeed was in no condition to resume the Tour.

24. Very Good has fully cooperated with Defendants in their purported investigation of the loss claim. Almost immediately after the claim was submitted, Defendants selected legal counsel to oversee the adjustment of the claim, instead of the more normal approach of retaining a non-lawyer insurance adjuster. Immediately turning to legal counsel made it clear that Defendants' goal was to hunt for any ostensible excuse, no matter how fanciful, to deny coverage or to maneuver themselves into a position of trying to negotiate a discount on the loss payment.

25. Very Good fully and carefully cooperated with Defendants' purported investigation of the claims, fully aware that Defendants would seize on any purported failure to jump through every hoop as a ground to deny the claim. While Kanye was still under medical care for his disabling condition, the Defendant syndicates demanded that Kanye submit to an immediate IME. Kanye was made available for a *purported* IME by a doctor hand-selected by the insurers' counsel, who was predisposed to look for some reason to deny the claim. Yet even Defendants' selected doctor had to admit that Kanye was disabled from being able to continue with the Tour. As demanded by the insurers, Kanye was also subsequently presented for an examination under oath ("EUO"), and at least eleven other persons affiliated with Kanye and Very Good were similarly presented for

EUOs.

26. Very Good provided written proof of the amount of their claim, and how the amount due (what the insurers refer to as the quantum) is calculated. The insurers have not disputed the methodology and evidence underpinning that quantum calculation. The amount due from Defendants is $9,860,843.51, together with interest thereon, from and after November 23, 2016, at the legal rate of ten percent (10%) per annum under California law.

27. Despite repeated written demands by Very Good to render a coverage decision and to pay the claim, Defendants have still failed to accept the claim, reject the claim, or pay any part of the claim. Defendants have, however, suggested that they may deny coverage of the claim on the unsupportable contention that use of marijuana by Kanye caused the medical condition. Defendants have also suggested they would be amenable to compromising the claim, something Very Good refuses to do.

### THE INSURANCE POLICIES

28. **Leg 1 Policy.** In consideration of a substantial premium paid by or on behalf of Plaintiff, Defendants Cathedral, Liberty, Market, and Catlin subscribed to a Cancellation, Abandonment and Non-Appearance Insurance Policy, with Unique Market Reference B1333ECB160287/288/289/290 ("Leg 1 Policy"), issued to Very Good covering 38 show performance dates from August 12, 2016 to November 2, 2016. Defendants subscribed to the risk of the policy in varying percentages and tiers of the total risk. This policy set out a schedule of the 38 dates, what the guaranteed amounts were for each show, and the percentage thereof to be insured.

29. **Leg 2 Policy.** In consideration of a substantial premium paid by or on behalf of Plaintiff, Defendants Cathedral, Liberty, Market, and Catlin subscribed to a Cancellation, Abandonment and Non-Appearance Insurance Policy, with Unique Market Reference B1333ECB160331/332/334/335 ("Leg 2 Policy"), issued to Very Good covering 24 show performance dates from October 11, 2016 to January 1,

2017. The Defendants subscribed to the risk of the policy in varying percentages and tiers of the total risk. This policy set out a schedule of the 24 dates, what the guaranteed amounts were for each show, and the percentage thereof to be insured.

30. **Relevant Policy Provisions.** The Leg 1 Policy and the Leg 2 Policy both provide in relevant part, as follows (as amended in the rider):

"1. **INSURING CLAUSE**

In consideration of payment by the Insured of the full premium due subject always to the terms, conditions, limitations and exclusions contained within or endorsed onto this Policy:

    1.1 [as amended] Subject to the terms, conditions, limitations and exclusions contained herein, this insurance is to pay the Insured the percentage of the legal contracted Gross Guarantee and/or costs and expenses and commitments, whichever is greater, should any Insured Performance(s) or Event(s) in the Tour Schedule be necessarily cancelled, abandoned, postponed or interrupted.

\* \* \*

3. **PERILS** [covered under the Policies, include] …

\* \* \*

    3.2 ACCIDENTAL BODILY INJURY to or ILLNESS of any Insured Person which, in the opinion of an independent medical practitioner approved by the Underwriters, prevents any Insured Person from appearing or continuing to appear in any or all of the Insured Events.

\* \* \*

4. **DEFINITIONS**

\* \* \*

    4.1 Abandonment or Abandoned means the inability to complete any Insured Event once commenced.

\* \* \*

4.3   Cancellation or Cancelled means the inability to proceed with any Insured Event prior to its commencement.

....."

## COVERAGE UNDER THE INSURANCE POLICIES FOR CANCELLATION AND ABANDONMENT OF SHOWS, AND OF THE TOUR

31.   The November 3, 2016 Forum show was an insured Performance or Event pursuant to the Leg 1 Policy. It was rescheduled to November 20, 2016 and was an insured Performance or Event as defined in the Leg 1 Policy.

32.   The shows scheduled for November 19, 2016 and November 21, 2016 through December 31, 2016 were insured Performances or Events under the Leg 2 Policy.

33.   Pursuant to the terms of The Insurance Policies, the Defendants each had a duty to indemnify Very Good for its loss on the agreed-upon percentage of Gross Guarantees the Plaintiff incurred as a result of the Cancellation or Abandonment of the insured shows.

34.   Defendants have delayed and procrastinated from providing a direct answer to the repeated inquiries from Very Good over the last several months regarding whether, and when, Defendants will acknowledge that the cancellation or abandonment of the shows and the Tour are covered losses under the Leg 1 and Leg 2 Policies. In evasive response to each such inquiry Defendants have (1) merely set out quotations from myriad provisions of the Insurance Policies, and purported to reserve their rights to claim that such provisions may be a basis for denying or limiting the claims, (2) have not stated whether any of the quoted passages actually apply to the facts or serve to preclude coverage, and (3) have asked for, or claimed the need for, more information and documents, and still more EUOs of persons Defendants claim may have material information bearing on the claims evaluation. Defendants have asked for EUOs of persons over whom Very Good has no control

and cannot compel to present for EUOs. Defendants know that the examination of such tangential persons has, and had, no probative importance to investigating the claim, especially after Very Good's participation in dozens of hours of sworn examinations of at least twelve witnesses.

35. Defendants' failure to timely accept coverage under the Insurance Policies, or to even make a decision on coverage and explain its position, was and still is unreasonable, without proper cause, and in bad faith. Among other things, as purported grounds for stalling a decision, Defendants have (1) cited to quoted provisions in the Insurance Policies that obviously have no application, and (2) raised the implication that irrelevant facts have bearing on issues of coverage.

36. Defendants have engaged in such conduct for the purpose of impairing Very Good's rights to receive the benefits of the Insurance Policies, and in the hope that by withholding payment of almost $10 million and forcing Very Good to spend extraordinary amounts of money to cooperate with Defendant, Very Good will, in frustration, accede to what would be an unwarranted discount on the indemnity to be paid under the Insurance Policies.

37. Plaintiff is informed and believes that the "planting" of the Confidential Information with news outlets as alleged above was part and parcel of Defendants' efforts to impair Plaintiff's rights to the indemnity payments due under the Insurance Policies.

## FIRST CAUSE OF ACTION

### (Against Defendants For Breach of Contract)

38. Very Good realleges and incorporates by reference each of the allegations set forth in paragraphs 1 through 37 above as though fully set forth herein.

39. The Insurance Policies constitute valid and enforceable written contracts between Very Good and the Defendants.

40. The Defendants are obligated, pursuant to the terms of the Insurance Policies, to indemnify Very Good for its loss on the agreed-upon percentage of Gross Guarantees the Plaintiff incurred as a result of the cancellation of the November 3, 19, and 20, 2016 shows, and all the other scheduled shows through December 31, 2016.

41. The Defendants have each materially breached their contractual obligations to Very Good pursuant to the terms of The Insurance Policies, by failing and refusing to indemnify Very Good for its loss on the agreed-upon percentage of Gross Guarantees Very Good incurred as a result of the cancelled shows and Tour.

42. Very Good has fully complied with all applicable terms and conditions of the Insurance Policies, including timely payment of premiums due under the policies. Any conditions precedent to recovery have been satisfied, waived, or are otherwise inapplicable.

43. As a direct and proximate result of the Defendants' material breaches of the Insurance Policies, Very Good has been damaged as alleged herein in an amount to be proven at trial, but which exceeds the principal amount of $9,860,843.51. Very Good has been deprived of the benefit of the insurance coverage for which Very Good paid substantial premiums.

## SECOND CAUSE OF ACTION

### (Against Defendants for Breach Of the Implied Covenant of Good Faith and Fair Dealings)

44. Very Good realleges and incorporates by reference each of the allegations as set forth in paragraphs 1 through 37 above as though fully set forth herein.

45. The Insurance Policies constitute valid and enforceable written contracts between Very Good and the Defendants.

46. Each of the Insurance Policies includes an implied covenant that the Insurers will act in good faith and deal fairly with Very Good.

47. In breach of the implied covenant of good faith and fair dealing, the Insurers unreasonably, without proper cause, and in bad faith have consciously withheld from Very Good the rights and benefits to which it is entitled under the Insurance Policies, including, but not limited to, payment of Plaintiff's loss on the agreed-upon percentage of Gross Guarantees as a result of the cancellation or abandonment of the Tour shows. Defendants acted without considering the interests of their insured at least to the same extent as they did their own interests.

48. Defendants acts alleged above are inconsistent with the reasonable expectations of their policyholder, are contrary to established claims practices and legal requirements, are contrary to the express terms of the Insurance Policies, and constitute bad faith.

49. As a direct and proximate result of Defendants' breaches of the implied covenant alleged above, Plaintiff has suffered substantial economic losses and other general, consequential, specific, and special damages, all in an amount to be proven at trial which is greater than $9,860,843.51.

50. Pursuant to the holding in *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), Very Good is entitled to recover all attorneys' fees and expenses that it has reasonably already incurred and will incur in its efforts to obtain the benefits of insurance that have been, and continue to be, withheld wrongfully and in bad faith.

51. The wrongful conduct of the Defendants alleged herein was intended by the Defendants to cause injury to Very Good, was despicable conduct which was carried on by the Defendants with a willful and conscious disregard of Very Good's rights with the intention of trying to intimidate Very Good to not pursue its rightful claims, was despicable conduct that subjected Very Good to cruel and unjust hardship in conscious disregard of the Plaintiff's rights, and was committed with a conscious disregard of Very Good's rights and with the intent to vex, injure or annoy Very Good, such as to constitute oppression, fraud or malice under California

Civil Code Section 3294, thereby entitling Very Good to punitive damages in an amount appropriate to punish or set an example of the Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Very Good prays that the Court enter judgment ordering as follows:

<u>On the First Cause of Action:</u>

1. For damages in an amount in excess of $9,860,843.51, to be determined at trial, together with prejudgment and post-judgment interest thereon as allowed by law.

<u>On the Second Cause of Action:</u>

2. For damages in an amount in excess of $9,860,843.51, to be determined at trial, together with prejudgment and post-judgment interest thereon as allowed by law;

3. For punitive and exemplary damages in an amount to be determined at trial; and

4. For Very Good's reasonable attorneys' fees and expenses.

<u>On All Causes of Action:</u>

5. For Very Good's costs of suit herein incurred; and

6. For such other and further relief as the Court may deem just and proper.

DATED: August 1, 2017

KING, HOLMES, PATERNO & SORIANO, LLP

By: _____
HOWARD E. KING
Attorneys for VERY GOOD TOURING, INC.

///

4642.017/1157890.6

14

COMPLAINT

## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands a jury trial in the above-entitled action on all claims for relief for which the Plaintiff is entitled to a trial by jury.

DATED: August 1, 2017

KING, HOLMES, PATERNO & SORIANO, LLP

By: _____
HOWARD E. KING
Attorneys for VERY GOOD TOURING, INC.